IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVAN LEE, | : | Civil No. 3:22-cv-1271 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN J. SAGE, | : | FILED SCRANTON OCT 2 1 2022 |
| Respondent | : | PER _____ DEPUTY CLERK |

**MEMORANDUM**

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Ivan Lee ("Petitioner"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"). Petitioner contends that his due process rights were violated in the context of two disciplinary hearings held at the Federal Correctional Institution, Fort Dix, New Jersey ("FCI-Fort Dix"). (Docs. 1, 2). He also asserts that the BOP incorrectly calculated his sentence. (*Id.*). For the reasons set forth below, the Court will deny the petition.

I.  **Background**

   A.  **BOP Disciplinary Process**

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate,

institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. *Id.* § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than twenty-four (24) hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. *Id.* § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. *Id.* § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably

2

available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

### B.   Incident Report Number 3399735

On May 17, 2020, while conducting a search of cell 219 in Unit 5741 at FCI-Fort Dix, a staff member discovered an MP3 player on the table which included a 16GB Samsung SD card with a photo of Petitioner, which was not a BOP approved photo. (Doc. 10-1, p. 9, Incident Report). In the photo, Petitioner was wearing a grey cap, a grey shirt, black glasses, and a medical mask, and he displayed his middle finger. (*Id.*). As a result, on May 18, 2020, Petitioner received Incident Report Number 3399735, charging him with violating Prohibited Act Code 108—possession of a portable telephone, pager, or other electronic

3

device. (*Id.*). On May 21, 2020, Petitioner appeared before the UDC. (*Id.*). The UDC referred the matter to the DHO due to the severity of the incident. (*Id.*).

On May 21, 2020, a staff member provided Petitioner with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at p. 20, Notice of Discipline Hearing before the DHO). Petitioner signed the form, did not request representation by a staff member, and elected to call a witness on his behalf. (*Id.*).

The DHO hearing convened on July 27, 2020. (*Id.* at pp. 10-13). During the July 27, 2020 hearing, the DHO confirmed that Petitioner received advanced written notice of the charges and that he had been advised of his rights before the DHO. (*Id.* at p. 10). Petitioner waived his right to a staff representative, expressed an understanding of his rights before the DHO, and admitted to the charges. (*Id.*). He provided the following statement: "I am guilty, I take responsibility for my actions." (*Id.*). Petitioner cited no procedural issues and offered no additional documentary evidence. (*Id.*). He requested to call a witness to provide testimony on his behalf. (*Id.* at pp. 10, 12). The inmate witness would purportedly testify that Petitioner was not present in the cell during the search. (*Id.*). The DHO found that this information was not relevant because the inmate witness was not an eyewitness to the incident and could not provide testimony to the particular facts described in the incident report. (*Id.* at p. 12).

The DHO found sufficient evidence that Petitioner committed the Code 108 violation, after considering and relying upon the reporting officer's written statement, the investigation, the photograph of Petitioner, and Petitioner's admission of guilt during the hearing. (*Id.* at pp. 11-12). The finding of guilt for the Code 108 violation resulted in disallowance of 41 days of good conduct time, loss of visiting privileges for 365 days, and disciplinary segregation for 60 days, suspended. (*Id.* at p. 12). The DHO cited the following reasons for imposition of the sanctions:

> The action/behavior on the part of Possessing a hazardous tool significantly threatens the health, safety, and welfare of not only himself, but of all persons, whether another inmate or any other person, who are involved in the act. This will not be tolerated. Past evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct. The sanctions imposed by the DHO were taken to inform the inmate that he will be held responsible for his actions/behaviors at all times.

(*Id.*).

At the conclusion of the hearing, the DHO provided a copy of the report to Petitioner and advised him of his appeal rights. (*Id.*). Thereafter, on August 27, 2020, a staff member delivered the DHO report to Petitioner. (*Id.* at p. 13).

### C. Incident Report Number 3432175

On September 11, 2020, while making rounds in Unit 5741 at FCI-Fort Dix, BOP staff observed Petitioner holding a mini L8star black cell phone while in his bunk in room 219. (Doc. 10-1, p. 14, Incident Report). Staff asked Petitioner to hand over the cell phone,

5

and he complied. (*Id.*). As a result, on September 11, 2020, Petitioner received Incident Report Number 3432175, charging him with violating Prohibited Act Code 108—possession of cell phone. (*Id.*). On September 14, 2020, Petitioner appeared before the UDC. (*Id.*). The UDC referred the Incident Report to the DHO due to the severity of the incident. (*Id.*).

On September 14, 2020, a staff member informed Petitioner of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.* at p. 15, Inmate Rights at Discipline Hearing). Petitioner was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at p. 21, Notice of Discipline Hearing before the DHO). Petitioner signed both forms, he requested representation by a staff member, and elected to call witnesses on his behalf. (*Id.*).

The DHO hearing convened on October 5, 2020. (*Id.* at pp. 16-19). During the October 5, 2020 hearing, the DHO confirmed that Petitioner received advanced written notice of the charges and that he had been advised of his rights before the DHO. (*Id.* at p. 16). Petitioner requested representation by a staff representative, requested to call witnesses on his behalf, expressed an understanding of his rights before the DHO, and stated that he was "not guilty." (*Id.* at pp. 16-17). Petitioner cited no procedural issues and offered no additional documentary evidence. (*Id.*). The staff representative reviewed the DHO packet and all available evidence and stated that he had "no concerns about inmate

6

Lee's Due Process Rights." (*Id.* at p. 16). The inmate witness appeared at the hearing and testified that Petitioner "didn't have the phone." (*Id.*).

Based on the greater weight of the evidence, the DHO found that Petitioner committed the Code 108 violation, after considering and relying upon the reporting officer's written statement, the eyewitness account of staff members, Petitioner's testimony during the hearing, the testimony of the inmate witness, staff memorandum, and a photograph of the cell phone found in Petitioner's possession. (*Id.* at pp. 16-18). The finding of guilt for the Code 108 violation resulted in disallowance of 41 days of good conduct time, loss of phone privileges for 720 days, and forfeiture of 60 days of non-vested good conduct time. (*Id.* at p. 18). The DHO cited the following reasons for imposition of the sanctions:

> The action/behavior on the part of Possessing a hazardous tool significantly threatens the health, safety, and welfare of not only himself, but of all persons, whether another inmate or any other person, who are involved in the act. This will not be tolerated. Past evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct. The sanctions imposed by the DHO were taken to inform the inmate that he will be held responsible for his actions/behaviors at all times.
>
> The DHO considered your continued disruptive behavior, also your willingness <u>NOT TO ACCEPT full</u> responsibility for your actions, and the seriousness of this particular prohibited act infraction. The fact there is a zero tolerance for inmates to possess hazardous tools in a Correctional Setting, and the fact this is your second Greatest Severity (100 level) incident report committed in the 24 month time period for REPEATED PROHIBITED ACTS WITHIN THE SAME SEVERITY LEVEL. Your last Greatest Severity incident report was committed on July 27, 2020, this was an unfavorable factor when determining your sanctions for this prohibited act. Clearly previous sanctions

have not deterred you from engaging in this type of disruptive behavior, therefore the DHO imposed slightly higher sanctions in accordance with P.S. 5270.09 . . .

(*Id.* at p. 19).

At the conclusion of the hearing, the DHO provided a copy of the report to Petitioner and advised him of his appeal rights. (*Id.*). Thereafter, on November 5, 2020, a staff member delivered the DHO report to Petitioner. (*Id.*).

## II. Discussion

### A. Due Process Claim

Petitioner claims that his due process rights were violated in the context of the disciplinary hearing process because he did not receive written notice at least twenty-four (24) hours prior to the DHO hearings. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when

8

consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564. Here, Petitioner was afforded all of the required procedural rights set forth in *Wolff*.

Petitioner asserts that he did not receive written notice of the charges at least twenty-four (24) hours prior to the DHO hearings. The record proves otherwise. *Wolff* requires that an inmate be provided notice of the charges against him at least twenty-four (24) hours in advance of the disciplinary hearing. *See Wolff*, 418 U.S. at 564. It is undisputed that Petitioner received such notice. On May 18, 2020, Petitioner received advanced notice of the charges against him when the investigating lieutenant delivered a copy of Incident Report Number 3399735 to him. (Doc. 10-1, p. 9). On July 27, 2020, Petitioner appeared before the DHO for Incident Report Number 3399735. (*Id.* at pp. 10-13). On September 11, 2020, Petitioner received advanced notice of the charges against him when the investigating lieutenant delivered a copy of Incident Report Number 3432175 to him. (*Id.* at p. 14). On October 5, 2020, Petitioner appeared before the DHO for Incident Report Number 3432175. (*Id.* at pp. 16-19). Thus, Petitioner was given notice for both incident reports in advance of the required twenty-four (24) hours prior to the hearings, and there is no merit to any argument that officials violated the procedures required by *Wolff*. Additionally, after Petitioner received the incident reports, he appeared before the UDC. He

was properly informed of his rights before the DHO hearings, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. At the conclusion of the DHO hearings, Petitioner received written decisions setting forth the evidence relied upon by the DHOs and the rationale behind the decisions. Petitioner was also notified of his right to appeal.

Since Petitioner was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decisions by the DHOs. In accordance with *Hill*, there need only be "some evidence" to support the disciplinary decision. *Hill*, 472 U.S. at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455. The record clearly reveals the existence of some evidence to allow the DHOs to conclude that Petitioner was guilty of the charges. With respect to Incident Report Number 3399735, in concluding that the greater weight of the evidence supported a finding of guilt, the DHO

considered the reporting officer's written statement, the investigation, the photograph of Petitioner, and Petitioner's admission of guilt during the hearing. (Doc. 10-1, pp. 11-12). As to Incident Report Number 3432175, in concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the reporting officer's written statement, the eyewitness account of staff members, Petitioner's testimony during the hearing, the testimony of the inmate witness, staff memorandum, and a photograph of the cell phone found in Petitioner's possession. (*Id.* at pp. 16-18). In each instance, the DHO's reliance on such documentary evidence supports a conclusion that the decision has some basis in fact and is supported by some evidence.

Next, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*. Petitioner was found guilty of two 100-level, greatest severity prohibited acts. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 12 months).
- D. Make monetary restitution.
- E. Monetary fine.

11

    F.      Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
    G.     Change housing (quarters).
    H.     Remove from program and/or group activity.
    I.      Loss of job.
    J.      Impound inmate's personal property.
    K.     Confiscate contraband.
    L.      Restrict to quarters.
    M.    Extra duty.

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO were consistent with the severity level of the prohibited acts and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time, disciplinary segregation, loss of privileges, and forfeiture of non-vested good conduct time, do not work an "atypical and significant hardship" on Petitioner and do not serve to extend his confinement beyond the expected parameters of his sentence.[1] *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

---

[1] Petitioner's projected release date is July 8, 2024, via good conduct time. (Doc. 10-1, pp. 3, 22).

## B. The BOP Correctly Computed Petitioner's Sentence

Petitioner also claims that the BOP incorrectly calculated his sentence. He requests that the Court order a review of his sentence computation because he is owed thirty-two (32) days of good conduct time.

Good time credit results in an actual reduction of an inmate's sentence and is awarded for maintaining good behavior during incarceration. All incarcerated persons, other than those serving a life sentence, are eligible for good time credit. Pursuant to 28 C.F.R. § 523.20(b)(1), the BOP awards inmates up to fifty-four (54) days of good conduct time credit for each year of the sentence imposed by the court.

Here, Petitioner is predicted to accrue fifty-four (54) days of good conduct over fourteen (14) years, for a total of 756 days. (Doc. 10-1, pp. 4, 22, Sentence Monitoring Good Time Data). However, in 2018, 2019, and 2022, Petitioner lost twenty-seven (27) days of good conduct time; in 2021, he lost fifty-four (54) days of good conduct time, and in 2020, he forfeited sixty (60) days of good conduct time. (*Id.*). In total, these sanctions resulted in disallowance of 195 days of good conduct time. Therefore, subtracting 195 from the 756 days, results in a total predicted good conduct time of 561 days. (*Id.*). Thus, as set forth in the BOP's Sentence Monitoring Good Time Data, the BOP correctly calculated Petitioner's sentence and he is not entitled to relief on this claim. (*See id.*).

13

## III. <u>Conclusion</u>

Based on the foregoing, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: October 21, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IVAN LEE, | : | Civil No. 3:22-cv-1271 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN J. SAGE, | : | |
| Respondent | : | |

FILED
SCRANTON
OCT 21 2022
PER _____
DEPUTY CLERK

## ORDER

**AND NOW**, this 21st day of October, 2022, upon consideration of the petition for writ of habeas corpus, and for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **DENIED**. (Doc. 1).

2. The Clerk of Court is directed to **CLOSE** this case.

Robert D. Mariani
United States District Judge